Eastern District of Kentucky
FILED
AUG 3 1 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-581

VICKY L. DAY, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff originally filed an application for Disability Insurance Benefits (DIB) in 1999, alleging inability to work due to a neck injury and inability to use her right arm without severe pain. (Tr. 97). After a period of reconsideration prompted by the Court's remand of July 31, 2002 (Tr. 501-10), the case is again before the undersigned on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or

1

mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404,1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into

2

account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf.

4

Day

Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

Day

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Court's previous remand had been based specifically on a failure to give sufficient credit to the opinion of the plaintiff's treating neurosurgeon, Dr. Amr O. El-Naggar, who had performed a diskectomy and fusion of the C5/C6 and C6/C7 levels of the plaintiff's cervical spine in April, 1999 after diagnosing a herniated disc. (Tr. 278, 317). After treating the plaintiff's subsequent complaints of severe right-sided occipital headaches with ganglion blocks, Dr. El-Naggar performed a right C2

6

percutaneous ganglionectomy in February, 2000. (Tr. 402-3). The diagnosis was right C2 occipital neuralgia. (Id.). Dr. El-Naggar afterwards restricted the plaintiff to only part-time work, along with previous restrictions of lifting no more than 20 pounds and "occasional" bending and twisting. (Tr. 326, 408-9). The plaintiff attempted to work at a volunteer job as a secretary, but was unable to do so for long even though she worked only three hours a day. (Tr. 406, 575). As previously noted by the Court, the ALJ rejected the treating physician's restrictions on working only four hours a day because he felt they were based on only subjective complaints, but the restrictions had actually been imposed immediately after the ganglionectomy on February 22, 2000. (Tr. 509). That portion of the ALJ's decision finding the plaintiff to be not disabled prior to the ganglionectomy was affirmed. (Tr. 510).

On remand, the ALJ obtained additional testimony from the plaintiff, including statements that she continued to have headaches and stiffness in the right side of her face, and weakness/soreness in her right arm radiating into her hands as a result of her neck operation. (Tr. 571-2). She also described pain due to a low back injury which radiated down her legs, and muscle spasms from her shoulder blade to her waist on the right-side. (Tr. 572-4). She also described depression, although she was unable to take medication that been prescribed for her without sleeping for up to 20 hours. (Tr. 574).

New medical evidence was submitted, including objective MRI testing of the lumbar spine in September, 2002 showing a mild protrusion at L5-S1 with mild narrowing of the right lateral recess. (Tr. 525). Dr. El-Naggar evaluated the plaintiff for her low back problems in October, 2002 and stated that there was no evidence

7

of disc herniation or nerve root compression, but her neck condition was "unchanged" with residual occipital headaches and right arm numbness. (Tr. 542). Regarding the lower back, Dr. El-Naggar found severe tenderness to palpation of the right sacroiliac joint but normal strength, sensation, and reflexes, so he did not recommend surgery, and suggested physical therapy and a course of injections from Dr. Howard Lynd. (Tr. 543-4). No functional restrictions were given.

The plaintiff saw Dr. Lynd on December 10, 2002. The physician noted her to be in moderate distress from low back pain with positive straight leg raising more on the right than the left. (Tr. 557-9). The plaintiff testified, however, that she was unable to afford treatment from the source due to health insurance limitations. (Tr. 576).

Dr. Jeff Reichard conducted a consultative examination of the plaintiff on February 9, 2003 and reviewed some records from Dr. El-Naggar from 2002 regarding her low back problem. (Tr. 546). Although Dr. Reichard signed a statement indicating that he had reviewed earlier records from 2000 which would have included Dr. El-Naggar's treatment of the plaintiff's neck problems and his restrictions to less than full-time work (Tr. 552), no mention was made of these records in his narrative report. He did find a somewhat restricted range of motion of the cervical spine, and noted limitations in the plaintiff's ability to fully squat and bend forward due to obesity. (Tr. 547-8). He concluded his narrative report by saying that the plaintiff appeared to be capable of performing at least a "mild amount" of ambulating, standing, bending, stooping, and lifting heavy objects, but she should not be driving on her current medications. (Tr. 549). He also completed a specific

8

functional capacity form stating that the plaintiff could perform light level exertion with occasional bending, squatting, crawling, climbing, and reaching above shoulder level. (Tr. 551).

The ALJ again rejected Dr. El-Naggar's restriction to working no more than four hours in an eight-hour day. He appeared to base his opinion on an "admission" in a deposition given by the physician in September, 2000 "that if the plaintiff had no symptoms and if she wanted to, he would release her to work full-time." (Tr. 483). The ALJ continued, stating that since Dr. El-Naggar's postoperative examination showed no neurological abnormalities "it is reasonable to conclude that the claimant could return to work if she were so motivated." (Id.).

In fact, Dr. El-Naggar's deposition, read as a whole, shows that he repeatedly reiterated his belief that she could work at a job for only four hours a day and he was concerned that, without adequate restrictions, the plaintiff would stress discs above and below her fusion site and develop more symptoms. (Tr. 423, 424-5 ,427). Nor did the plaintiff state that she had "no symptoms" following her surgery; she continued to complain of right-sided headaches and right arm weakness. (Tr. 540, 555, 572). Under the circumstances, with the plaintiff not engaging in full-time work, the lack of neurological findings does not by itself establish that the treating physician's restrictions were unjustified by objective evidence.

Furthermore, the crucial issue of the number of work hours was apparently not communicated to the consultative examiner, Dr. Reichard. In any case, he did not address the point or explain why his opinion might differ from the treating source.

Day

Therefore, he does not provide substantial evidence to overcome the opinion of Dr. El-Naggar.

Therefore, the administrative decision will be reversed with instructions to award benefits to the plaintiff as of February 28, 2000, the date of her ganglionectomy and of Dr. El-Naggar's first opinion that she would be limited to part-time work. (Tr. 408).

This the 31 day of August, 2006.

G. WIX UNTHANK
SENIOR JUDGE

10